# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LORING, | Case No. 1:15-cv-00563-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S SOCIAL SECURITY APPEAL** |
| v. | (Doc. No. 1) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Kimberly Loring ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g); 1383.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 10.)

## FACTUAL BACKGROUND

Plaintiff filed an application for SSI on October 25, 2010, alleging disability beginning on November 19, 2009, due to lower back pain, high blood pressure, and asthma. (Administrative Record ("AR") 194, 215.)

**A.     Relevant Evidence**

Plaintiff has reported a history of low-back pain and leg pain since 2007. (AR 290-341.) In relation to a previous application for benefits, Plaintiff was examined by Abbas Mehdi, M.D., on November 9, 2007, for an orthopedic consultation. (AR 290-93.) Dr. Mehdi summarized Magnetic Resonance Imaging ("MRI") scans taken of Plaintiff's lumbar spine on July 17, 2007. (AR 290.) The scan showed degenerative changes at multiple levels of Plaintiff's lumbar spine, "uncovering of the L4-5 disk with facet and ligamentum hypertrophy," and mild foraminal stenosis. (AR 290.) Dr. Mehdi noted Plaintiff had some "symptom magnification and poor effort," indicated Plaintiff walked "without evidence of a limp," and concluded she could stand and/or walk up to six hours in an eight-hour day. (AR 291, 293.)

On January 25, 2011, Plaintiff was seen by Phillip Kim, M.D., for complaints of back pain. (AR 350-51.) Plaintiff reported muscle weakness, lower back pain radiating and not starting suddenly, and lower back stiffness. (AR 350.) Upon examination, Plaintiff demonstrated thoracolumbar tenderness on palpation, but had normal ranges of motion. (AR 350.) Dr. Kim assessed lumbar disc degeneration and recommended Plaintiff continue her current medication and follow-up in one month. (AR 351.)

On February 15, 2011, Plaintiff was examined by Roger Wagner, M.D. (AR 342-48.) Dr. Wagner reviewed Dr. Mehdi's orthopedic evaluation dated November 9, 2007, which included a description of Plaintiff's July 2007 MRI. (AR 342.) Plaintiff reported a history of back pain; although she was able to walk, she came to the appointment in a wheelchair. (AR 342.) Dr. Wagner noted Plaintiff came to the appointment "with a very passive eyes closed affect, kind of mildly moaning whenever she moves around." (AR 342-43.) Dr. Wagner indicated it was difficult to tell how much of this was "effected verses results of her medication." (AR 343.) Plaintiff also reported arm numbness and asthma. (AR 343.) Plaintiff stated she currently lived

2

1   with her daughter and her daughter's family; she did some cooking and very little cleaning, as she
2   does these slowly enough that her daughter tells her to "get out of the way."  (AR 343.)  Plaintiff
3   also described going shopping and performing her own activities of personal grooming.
4   (AR 343.)

5   On examination, Dr. Wagner noted Plaintiff sat "very comfortably" through the entire 20
6   minutes of history taking; she was able to get up out of her wheelchair to ambulate; she was
7   slightly broad based and stiff-legged, but ambulated for about 20 feet without having dyspnea on
8   exertion and did not appear unstable.  (AR 344.)  Plaintiff was able to bend over, take off her
9   shoes and socks, and put them back on by herself.  (AR 344.)

10   Plaintiff was able to stand on her toes and walk on her heels for a "good 10 feet" without
11   any significant difficulties, but she did this extremely slowly.  Her gait was slightly broad based,
12   not favoring either leg, and she appeared fairly stable.  (AR 345.)  Although Plaintiff presented in
13   a wheelchair, she was able to ambulate at the examination.  Dr. Wagner noted Plaintiff "was
14   unstable enough that perhaps the cane would be necessary.  It was unclear that she actually needs
15   anything as significant as a wheelchair."  (AR 345.)

16   As to her lower back pain, Dr. Wagner reported as follows:

17   The claimant does suffer from some low back pain and has been apparently []
    prescribed a wheelchair.  However, I do not have the outside medical records
18   supporting this allegation.  She claims that she can only walk approximately 50
    feet.  Given her performance here today, that would seem likely to be accurate.
19   However, it would be imperative that outside observations of the claimant's actual
20   ability to ambulate and move around without the use of a wheelchair be used to
    help evaluate this.  Given the evaluation performed approximately three years ago
21   as noted in the review of records, it seems that this degree of deterioration of her
    ability to ambulate is quite surprising.  Again, I do not have any actual copies of
22   any record of imaging studies for the back.  The claimant did not seem in any
23   imminent danger of falling.  Gives me no history of any significant falls.  It is
    unclear why fairly soon after the previous evaluation was performed she alleges she
24   was given a wheelchair.

25   (AR 346.)

26   Dr. Wagner provided a functional assessment as follows:

27   This is based only on the performance of the claimant on today's exam.  Again,
28   outside observations of the claimant's actual ability to ambulate would be extremely

3

> helpful, particularly given that her performance today is significantly changed from the performance only approximately three years ago as documented []in the orthopedic consultation performance at Valley Health Resources on November 9, 2007.
>
> Maximum standing and walking capacity: Based on my evaluation today, up to four hours.
>
> Maximum sitting capacity: No limitation.
>
> Assistive device: The claimant comes in using a wheelchair. Again, it would be extremely helpful to have the actual documenting of this being medically necessary. The claimant did appear to have some difficulty walking and ambulating. However, she is on large amounts of pain medication and acts somewhat somnolent. To my observation, the claimant likely needs a cane at least.
>
> Maximum lifting and carrying capacity: 20 pounds occasionally and 10 pounds frequently.
>
> Postural activities: Based on the claimant's performance today, climbing and balancing should not be performed. Otherwise, no limitations.
>
> Manipulative activities: No limitations.
>
> Workplace activities: Based on the claimant's performance walking today, the claimant should [not] work around heights or heavy machinery. The claimant should not work around extremes of chemicals, dust, fumes, or gasses due to her asthma. Otherwise, no limitations.

(AR 347.)

On February 18, 2011, an x-ray of Plaintiff's lumbar spine showed degenerative disc disease, bilateral neural foraminal stenosis, and lateral recess stenosis. (AR 349, 390.)

On February 25, 2011, Plaintiff was seen again by Dr. Kim. (AR 361-62.) Plaintiff reported numbness in her legs, but no gait abnormality was observed. (AR 361.) She reported her medication improved her symptoms, and she was attending physical therapy. (AR 361.) Dr. Kim noted Plaintiff was in a wheelchair. (AR 362.) Dr. Kim stated Plaintiff was negative for the reverse straight leg raising test, had no tenderness on palpation of her hips, and no abnormalities were noted in coordination. (AR 361-62.) Plaintiff was positive for the regular straight leg raising test. (AR 362.) Dr. Kim diagnosed Plaintiff with lumbar radiculopathy and prescribed medication. (AR 362.)

4

On April 25, 2011, Plaintiff was examined by Vincent Wang, M.D., regarding her complaints of lower back pain. (AR 389.) Dr. Wang reported Plaintiff had almost full strength in her extremities, and her sensations were intact. (AR 390.) Plaintiff used a cane and was unable to walk due to her pain complaints. (AR 390.) Dr. Wang concluded a surgical procedure on Plaintiff's back was not appropriate at that time because of her complaints of chest pain and obesity. (AR 390.) Instead, Dr. Wang recommended a trial of epidural steroid injections, a weight loss program, and that Plaintiff stop smoking. (AR 390.) Dr. Wang informed Plaintiff that losing weight would help her back pain. (AR 390.) Dr. Wang ordered a flexion/extension x-ray of Plaintiff's lumbar spine to determine whether she had additional instability on flexion/extension of her lumbar spine. (AR 390.)

Between March 2011 and August 2011, Plaintiff received treatment at Madera Community Hospital for lower back and leg pain. (AR 392-426.) Treatment providers prescribed epidural steroid injections and medication. (*See* AR 392-94, 404, 407, 409, 414.) Clinical examination notes were fairly unremarkable during this time, and there were notations of intact motor strength, full motor strength and normal sensation in lower limbs, and a "normal" musculoskeletal examination. In March 2011, Plaintiff underwent a lumbar spine MRI which showed "[m]ild multilevel degenerative changes." (AR 365-66.) In April 2011, an x-ray of Plaintiff's spine was reviewed by a physician, who suspected no change in Plaintiff's spinal condition with flexion/extension. (AR 377.)

Plaintiff received treatment between May and August 2011 at the Darin Camarena Health Centers. (AR 427-55.) Plaintiff's examinations were generally unremarkable. For example, Dr. Kim reported Plaintiff had no tenderness in her thoracolumbar spine on palpation, and reported she had no coordination or sensory abnormalities. In July 2011, Plaintiff reported her back pain had improved due to weight loss. (AR 446.)

On May 23, 2011, state agency physician C. De la Rosa, M.D., reviewed Plaintiff's records. (AR 378-82.) Dr. De la Rosa noted that Dr. Wagner was vague in affirming Plaintiff's alleged walking limitations. (AR 382.) Dr. De la Rosa also noted that the objective findings did not support radiculopathy, atrophy, or weakness as would be expected in the lower extremities if

5

Plaintiff were primarily using a wheelchair as she alleged. (AR 382.) Dr. De la Rosa opined Plaintiff could perform a range of medium work. (AR 378-82.)

Plaintiff also received treatment at Community Medical Centers between October 2011 and January 2013. (AR 563-1087.) Treating providers there prescribed medication and physical therapy. (AR 744, 761, 779, 1070.) Plaintiff reported lower back and leg pain, but reported improved symptoms such as moderate decreases in pain levels with medication. (AR 615, 623, 655, 726, 820, 866, 908.)

On December 30, 2011, the Cooperative Disability Investigations ("CDI")[2] interviewed Plaintiff at her residence based on Plaintiff's variable presentations at examinations – i.e., sometimes she used a wheelchair, but at other times she was able to walk without an assistive device. (AR 246-47.) Plaintiff informed investigators that she walked around her house using the walls to support herself and that she used a wheelchair outside of her home. The investigators, however, reported Plaintiff "did not use any assistive device nor did she use the walls or furniture for support as she walked." (AR 247, 249.) The investigators reported Plaintiff did not have a wheelchair ramp in her residence, and that she was required to go up steps at the front entrance of her home and to get to her bedroom. (AR 249.)

On January 4, 2012, state agency reviewing physician I. Ocrant, M.D., reviewed Plaintiff's records. (AR 465.) Dr. Ocrant noted Plaintiff had undergone a consultative examination with a walker, but also the CDI report "clearly show[ed] an assistive device is not used by [Plaintiff] outside SSA venues" and that "this is consistent with [Plaintiff's] pattern of malingering." (AR 473.) Dr. Ocrant reported that, given Plaintiff's malingering, he did not believe he could give weight to the Dr. Wagner's findings. (AR 474.) Dr. Ocrant opined Plaintiff could perform light work, which included the ability to stand and/or walk for up to six hours in an eight-hour day. (AR 466-69.)

---

[2] The CDI is a unit established jointly by the Social Security Administration and the Office of the Inspector General to investigate disability claims under Title II and Title XVI that state disability examiners believe are suspicious. "The CDI program's primary mission is to obtain evidence that can resolve questions of fraud before benefits are ever paid." *See* http://oig.ssa.gov/cooperative-disability-investigations-cdi.

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 81-90, 95-107, 110-14, 122-24.) A hearing was held on July 11, 2013, before an ALJ. (AR 38-63.)

On September 5, 2013, the ALJ issued a decision finding Plaintiff not disabled from October 25, 2010, through the date of decision. (AR 21-32.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since her application date of October 25, 2010 (AR 23); (2) Plaintiff had severe impairments: degenerative disc disease; obesity; depressive disorder; anxiety disorder; diabetes mellitus; and fibromyalgia (AR 23); (3) did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 24); and (4) had the residual functional capacity ("RFC")[3] to perform a range of light work, could lift 20 pounds, sit, stand, and walk for a total of six hours each in an eight-hour work day with regular breaks; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; and is limited to performing simple, repetitive tasks. (AR 25.) The ALJ found that Plaintiff had no past relevant work, but could perform jobs that exist in significant numbers in the national economy. The ALJ concluded Plaintiff was not disabled as defined by the Social Security Act at any time from October 25, 2010, through the date of decision. (AR 32.)

Plaintiff sought review by the Appeals Council on September 19, 2013. (AR 15-17.) The Appeals Council denied Plaintiff's request for review on February 10, 2015. (AR 1-6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

7

**C.      Plaintiff's Argument on Appeal**

On April 11, 2015, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff argues the ALJ failed to properly consider Dr. Wagner's opinion, and the disability decision was not predicated on substantial evidence.

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

**APPLICABLE LAW**

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic

techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

Plaintiff argues the ALJ wrongfully rejected Dr. Wagner's opinion that Plaintiff had significant limitation in her ability to stand and walk: the ALJ impermissibly discounted Dr. Wagner's opinion in this regard in favor of Dr. Ocrant, a non-examining physician. Plaintiff maintains Dr. Ocrant's contradictory opinion is not a legally sufficient basis to reject the opinion of Dr. Wagner who examined Plaintiff. Plaintiff further argues the error was prejudicial because a VE testified that a person with the limitations opined by Dr. Wagner could perform only sedentary

work, and under the Medical-Vocational Grids, Plaintiff is disabled when limited to sedentary work.

The Commissioner argues the ALJ properly gave more weight to Dr. Ocrant's opinion regarding Plaintiff's ability to stand and/or walk than to that of Dr. Wagner because Dr. Wagner's assessment was internally inconsistent and undermined by the subsequent CDI report. The Commissioner maintains the ALJ's evaluation of Dr. Wagner's assessment was based on a reasonable interpretation of the evidence and should be upheld.

The ALJ assessed Dr. Wagner's opinion as follows:

> I gave significant weight, but not great weight[,] to the opinions of the internal medicine consultative examiner, Dr. Wagner (Ex. B3F). Dr. Wagner also opined the claimant was limited to a light range of work. However, he also assessed the claimant was limited to standing/walking four hours in a workday and would have no limitations on sitting. These determinations in themselves are contradictory because Dr. Wagner assessed more restrictive stand/walk limitations due to the claimant's back impair[ment], but then assessed essentially no limitations in sitting, which would also affect the back. I gave greater reliance to the State agency consultant opinion on reconsideration because it considered the treatment records over a longitudinal period rather than making the determinations based on a one-time examination.

(AR 30.)

The ALJ gave significant, but not great weight, to Dr. Wagner's opinion regarding Plaintiff's ability to stand and walk because it was inconsistent. Specifically, the ALJ noted Dr. Wagner had imposed restrictive standing and walking limitations based on Plaintiff's lower back condition and pain, but did not assess any sitting limitations, which the ALJ believed would also implicate Plaintiff's lower back. This is a reasonable interpretation of Dr. Wagner's opinion. (AR 342, 344.) Dr. Wagner questioned the degree of limitation Plaintiff was experiencing in her ability to walk, given her evaluation in 2007. (AR 346 ("Given the evaluation performed approximately three years ago as noted in the review of records, it seems that this degree of deterioration of her ability to ambulate is quite surprising.").) Yet Dr. Wagner still opined a fairly restrictive limitation in Plaintiff's ability to walk and/or stand, but simultaneously assessed no limitation in her ability to sit, which Plaintiff also claimed was affected by her back pain. In this manner, Dr. Wagner's opinion about Plaintiff's ability to walk and/or stand is not well supported

and appears facially inconsistent with the lack of a corresponding sitting limitation. *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (per curiam) (treating doctor's conclusory opinion that claimant was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's medical reports). This was a legally sufficient basis to give this portion of Dr. Wagner's opinion less weight and to refuse to adopt it as part of the RFC.

Importantly, the ALJ also noted Dr. Ocrant's opinion was more convincing as to Plaintiff's ability to stand and walk because it was based on a review of Plaintiff's longitudinal records, not a one-time examination. Although an examining physician is normally entitled to more deference than a non-examining physician, *see Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), there were specific and legitimate reasons to discount Dr. Wagner's opinion in this case. In his February 2011 examination report, Dr. Wagner specifically noted his skepticism about Plaintiff's examination presentation with regard to her ability to walk and stand, and reported he did not have any access to Plaintiff's prior MRI other than Dr. Mehdi's description of the 2007 MRI findings to determine whether her presentation was accurate or supportable. (AR 346 ("I do not have the outside medical records supporting this allegation [of low back pain]."); AR 346 ("Again, I do not have any actual copies of any record of imaging studies for the back . . . It is unclear why fairly soon after the previous evaluation was performed she alleges she was given a wheelchair.").) In finalizing his functional assessment opinion, Dr. Wagner was very equivocal about the examination results:

> This [functional assessment] is based only on the performance of the claimant on today's exam. Again, outside observations of the claimant's actual ability to ambulate would be extremely helpful, particularly given that her performance today is significantly changed from the performance only approximately three years ago as documented [in] the orthopedic consultation performed at Valley Health Resources on November 9, 2007.

(AR 347.)

In January 2012, Dr. Ocrant, reviewed Plaintiff's records including Dr. Wagner's assessment, new MRI and x-ray results, and the CDI investigation results that severely undercut Dr. Wagner's opinion regarding Plaintiff's ability to walk and stand. In reviewing these additional records, Dr. Ocrant noted Plaintiff did not use an assistive device outside "SSA venues," and that

11

she showed a persistent pattern of malingering. (AR 473.) Based on Plaintiff's "objectively verifiable pathology" as evidenced by recent MRI and x-ray results, Dr. Ocrant opined Plaintiff was able to perform light work with some postural limitations, which includes standing and walking about six hours in an eight-hour workday. (AR 474.)

Although Dr. Ocrant was a non-examining physician, he had additional records and information to which Dr. Wagner did not have access. An ALJ may rely on the opinion of a non-examining, non-treating physician to discredit an examining physician only when the non-examining physician's opinion is supported by and consistent with the other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The objective evidence supporting Dr. Ocrant's opinion was obtained after Plaintiff was examined by Dr. Wagner, and bears significantly on Plaintiff's alleged lower back pain and her ability to walk or stand as a result. Specifically, a March 2011 MRI of Plaintiff's lumbar spine (AR 365-66) showed only mild degenerative changes, and an April 2011 x-ray (AR 406) was generally consistent with the MRI findings. These objective findings were not a significant departure or worsening of Plaintiff's July 2007 MRI findings noted by Dr. Mehdi. (AR 290-93.) Consistently, Dr. Mehdi, like Dr. Ocrant, opined Plaintiff could perform six hours of standing and/or walking in an eight-hour day. (AR 293.)

In addition, Dr. Wagner noted other medical records or objective clinical findings beyond Dr. Mehdi's examination report would have aided in supporting Dr. Wagner's opinion, particularly as it related to Plaintiff's ability to stand and walk, given the extreme changes Plaintiff alleged since Dr. Mehdi's examination. Dr. Ocrant's opinion was predicated on a review of additional records Dr. Wagner expressly indicated would have been helpful in formulating an opinion on Plaintiff's ability to walk and stand. This additional and supporting evidence was a proper basis for the ALJ to give more weight to Dr. Ocrant's opinion as to Plaintiff's ability to walk and stand. *Morgan*, 169 F.3d at 600.

Finally, Dr. Wagner did not have the benefit of the CDI investigation results, which showed Plaintiff did not need an assistive device to ambulate as she claimed during the course of her compensation examination with Dr. Wagner. This bears directly on Dr. Wagner's opinion

1  regarding Plaintiff's ability to walk and/or stand.  Specifically, in December 2011, CDI
2  investigators went to Plaintiff's home, and Plaintiff greeted them at the door without an assistive
3  device; it was observed she did not use the wall to support herself as she told investigators.
4  (AR 246, 249.)   This confirmed Dr. Wagner's skepticism about Plaintiff's February 2011
5  examination performance.  (AR 346 ("[Plaintiff] has apparently been prescribed a wheelchair.
6  However, I do not have the outside medical records supporting this allegation . . . it would be
7  imperative that outside observations of the claimant's actual ability to ambulate and move around
8  without the use of a wheelchair be used to help evaluate this.").)

9       In sum, Dr. Ocrant's opinion was predicated on the consideration of additional objective
10 testing results and the CDI investigation results showing Plaintiff's exaggeration and malingering
11 pertaining to her use of an assistive device.  Dr. Ocrant's opinion is supported by and consistent
12 with other evidence in the record and constitutes substantial evidence.  As such, the ALJ did not
13 err in crediting it over the opinion of Dr. Wagner as to Plaintiff's ability to walk and/or stand.
14 *Morgan*, 169 F.3d at 600.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, Acting Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:   **April 19, 2016**                              **/s/ Sheila K. Oberto**
                                                                                    UNITED STATES MAGISTRATE JUDGE